SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**NICOLE M. BOCKELMAN, OSB #105934**
Assistant United States Attorney
Nicole.Bockelman@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:25-CR-00378-SI |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **SIR JAMES ARTHUR WILLIAMS JR.,** | |
| **Defendant.** | |

## INTRODUCTION

Defendant was involved in an aggressive altercation which resulted in a victim being shot. Two days later, police found defendant in possession of a firearm which police believed was the same firearm that was used in the shooting. Police obtained a video showing defendant aggressively walking toward the victim and getting into the victim's face before the man with defendant shot at the victim five times.

**Government's Sentencing Memorandum**                                    **Page 1**

The facts of the instant offense combined with defendant's criminal history support the parties' joint recommendation of 21 months prison followed by three years of supervised release. It is the government's position that 21 months' imprisonment imposes consequences for defendant's illegal firearm possession; this Court should impose the jointly recommended 21-month prison term.

**FACTUAL BACKGROUND**

**A.     The Offense Conduct**

On August 22, 2025, at about 2:45 p.m., officers with the Portland Police Bureau responded to a shots fired call at Paradise Video located at 14712 SE Stark Street in Portland, Oregon. When officers arrived, they spoke with Paradise Video employees and collected surveillance videos from Stark Street. Officers reviewed the video and saw two males (S1 and defendant) walking together until they approached a third man (V1) who was standing alone. Defendant, accompanied by S1, aggressively approached V1 and began to get very close to V1 and posture as if he would hit V1. V1 punched defendant once while moving away from defendant and S1. After V1 punched defendant, he quickly tried to run away from defendant and S1.

After the shooting, defendant and S1 quickly moved into the suspect vehicle and drove away. S1 immediately pulled a firearm from his pants and shot at V1 five times while V1 ran into oncoming traffic to escape S1 and defendant. As a result of the shooting, V1 suffered a gunshot wound and was initially nonresponsive when he was taken to the hospital. After receiving treatment, V1 reported that he had received threatening messages from people he did not know regarding one of his ex-girlfriends. V1 said he did not know who was sending the threatening messages, but he agreed to go to a 7-11 store located at SE Stark Street to meet with

**Government's Sentencing Memorandum**                                                          **Page 2**

the people that sent him the threatening text messages to determine why they were threatening him.

V1 said that when he arrived at the Stark Street location, that the man that was later determined to be the defendant ran up to him and made threatening comments.  V1 said he thought he was going to get jumped, so V1 punched defendant and then the heavier male (S1), pulled a gun from his front waistband, so V1 ran away.  V1 heard several gunshots and felt the bullet hit his back and he believed he would die from blood loss.

On August 24, 2025, officers drove to the location where the suspect vehicle was found by police.  Near the suspect vehicle, officers saw two men they recognized as defendant and S1. Police approached defendant and S1 and S1 gave a false identity to police while defendant began to walk away from officers.  Officers saw that defendant had a large object in the right front pocket of his jean shorts and told defendant he was not free to leave.  Officers told defendant to move toward the officers and defendant initially took a few steps away from police, until he eventually followed their commands.

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

Defendant was placed in custody and officers found a .380 Glock 42 in his shorts.



Post *Miranda,* defendant told police he was at the shooting (referring to V1 being shot) but defendant said he was surprised and did not expect S1 to, "do this". Defendant said he went to Paradise Video to talk to V1 because defendant heard V1 had been threatening the kids of a woman associated with S1. Defendant said that when he was stopped by police, he had the gun in his pants for protection because he was afraid of retaliation by people connected with V1.

**B. The Charge**

On February 4, 2026, defendant pleaded guilty to a single-count indictment, which charged that on or about August 24, 2025, in the District of Oregon, defendant, having knowingly been convicted of a crime punishable by imprisonment for a term exceeding one year, specifically: Unlawful Use of a Weapon, on or about December 14, 2017, in Clackamas County Circuit Court, in violation of ORS 166.220, did knowingly and unlawfully possess the following firearm: a .380 Glock 42 firearm, which firearm had previously been shipped or transported in interstate or foreign commerce, in violation of 18 U.S.C. § 922(g)(1). PSR at ¶1.

**Government's Sentencing Memorandum**                                                **Page 4**

### C. Guidelines Calculations

The Pre-Sentence Report (PSR) determined defendant's base level to be 24 under USSG § 2K2.1(a)(2), and his total offense level to be 21 after all adjustments. PSR at ¶27.  At the time of calculating the defendant's base offense level, the government did not believe the Attempted Assault in the Second Degree or the Sex Abuse convictions were considered crimes of violence under USSG § 4B1.2(a).  Upon further review, the government agrees with the PSR determination that both convictions have as an element the use, attempted use, or threatened use of physical force against the person of another.  The parties have no dispute with PSR calculations but included a 3-level reduction due to defendant's discussions to resolve his case early and his willingness to agree to a joint recommendation under 18 U.S.C. § 3553(a).

### Felony Criminal History

| Crime | Conviction Date | Jurisdiction | Sentence |
|---|---|---|---|
| Theft III (misdemeanor) (Age 19) | 02/08/2008 | Washington County, OR | 18 months probation |
| Sexual Abuse I (felony) (Age 20) | 04/22/2009 | Washington County, OR | 75 months prison; 10 years post-prison supervision |
| Unlawful Use of a Weapon-Constituting Domestic Violence (felony); Attempted Assault II-Constituting Domestic Violence (felony) (Age 29) | 12/14/2017 | Clackamas County, OR | 36 months prison; 2 years post prison supervision |
| Theft II (misdemeanor), Harassment (misdemeanor) (Age 35) | 02/27/2024 | Marion County, OR | 60 days jail; 18 months probation |

The total criminal history score for the above criminal history is 8 and one additional point is added because the instant offense was committed while defendant was under a criminal justice sentence; thus, the corresponding Criminal History Category is IV. PSR at ¶ 41-43.

**D. Government's Recommended Sentence**

The parties jointly recommend 21 months' imprisonment followed by three years of supervised release.  The government makes this recommendation because of defendant's dangerous conduct in possessing a weapon in public as well as his conduct in the events leading up to the shooting of V1 demonstrate that 21 months prison with three years of supervised release is appropriate to protect the public.

The government recognizes that defendant has faced significant obstacles throughout his life.  These obstacles include defendant's violent and traumatic childhood that included defendant's brother dying when defendant was 6 years old and defendant being placed in foster care throughout the majority of his childhood.  Unfortunately, his obstacles did not stop in childhood, in 2024, defendant's cousin was murdered and defendant has suffered a traumatic brain injury.

In addition to recognizing defendant's obstacles, it is also important to note the danger that defendant poses to the public.  Defendant was a part of the encounter with V1 on August 22, 2025, that ended in V1 being shot and hospitalized.  On that day, defendant aggressively charged at V1 before the man that V1 was with (S1) shot at V1 five times.  Days later, on August 24, 2025, police found defendant with the firearm that law enforcement believed was the same firearm used to shoot V1.  Defendant told police that he felt he needed to carry the firearm because he needed to protect himself.  Defendant demonstrated his knowledge of criminal

**Government's Sentencing Memorandum**                                    **Page 6**

conduct by acknowledging that he is a felon but told police that he felt he needed to carry the firearm.

A review of defendant's performance while in custody shows he is not compliant with the expectations and terms provided by the Bureau of Prisons.  After his conviction in 2009 of Sexual Abuse in the First Degree, defendant was sentenced to 75 months prison.  After defendant was placed in custody, defendant received sanctions for Inmate Assault III, Unauthorized Use of Information System II, Unauthorized Organization I, Extortion II, Contraband II, Staff Assault I, Inmate Assault II, Disrespect I, Disobedience of an Order I, Unauthorized Area I, Body Modification, and Disrespect II.  After defendant was convicted of Unlawful Use of a Weapon Constituting Domestic Violence and Attempted Assault II Constituting Domestic Violence, defendant was sentenced to 36 months prison.  Like his prior period of incarceration, defendant was unable to remain complaint with Department of Corrections and defendant received sanctions for Inmate Assault I.

The parties recommend a prison sentence of 21 months' imprisonment followed by three years of supervised release because this is a sentence that is sufficient but not greater than necessary to comply with the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation. *Dean v. United States,* 137 S. Ct. 1170, 1175 (2017); 18 U.S.C. §3553(a).

The nature and circumstances of the underlying offense demonstrate to the court that defendant should not be granted any benefit beyond the reductions already provided. Defendant's conduct of possession of a firearm that was used two days prior in a shooting and his access and control over a firearm demonstrates a disregard for public safety and he should be

**Government's Sentencing Memorandum**                                                    **Page 7**

held accountable for his actions.  The jointly recommended 21-month prison term followed by three years' supervised release should be imposed.

### E.  Forfeiture

As part of his plea agreement, defendant agreed to forfeit all right, title, and interest in and to all assets which are subject to forfeiture pursuant to 18 U.S.C. § 853 including the .380 Glock 42 firearm, serial #AAPE431 as set forth in Count One of the Indictment.

### **CONCLUSION**

Based on the foregoing, the government urges that this Court impose the jointly recommended 21-month prison sentence, followed by three years' supervised release, subject to the standard conditions, plus the special conditions that have been recommended in the PSR, and imposition of a $100 fee assessment.

Dated: June 3, 2026.

Respectfully submitted,

SCOTT BRADFORD
United States Attorney


*/s/ Nicole M. Bockelman*
NICOLE M. BOCKELMAN, OSB #105934
Assistant United States Attorneys

**Government's Sentencing Memorandum**                                        **Page 8**